# CASE NO. 24-1636

---

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

### EDWARD M. WILLIAMS,

**Plaintiff/Appellant,**

v.

### FAIRFAX COUNTY GOVERNMENT,

**Defendant/Appellee**

---

ON APPEAL FROM THE UNITED STATES DISCTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

---

## REPLY BRIEF OF APPELLANT

---

SUBMITTED BY:

Roya Vasseghi (VSB No. 85122)
VASSEGHI LAW GROUP
9663-D Main Street
Fairfax, VA 22031

(703) 215-9358 Tel.
(703) 563-7401 Fax
roya@vasseghilaw.com

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................2

ARGUMENT ..........................................................................1

I.  Williams Established a Prima Facie Case for Retaliation……………….3

II.  Williams presented sufficient evidence to permit a reasonable juror to find the County's proffered reason for terminating his employment was false..5

A. The County's Retaliatory Conduct…………………………………….6

B. The County's Inconsistent Reasons for Williams' Termination………7

III.  The County refused to provide comparator evidence in discovery and should not be permitted to rely on the lack of the same to prevail on summary judgment……………………………………………………11

IV.  Williams has not waived appellate review of his claims of sexual orientation discrimination and hostile work environment……………………………………………………..14

CONCLUSION…………………………………………………………16

## TABLE OF AUTHORITIES

**Cases**                                      **Page**

*Burlington Northern & Santa Fe Ry. v. White*,
    548 U.S. 53, 68 (2006) ................................................................... 4

*DeJarnette v. Corning, Inc.*,
    ............................................................................................... 11

*First Chicago Int'l v. United Exchange Co.*,
    836 F.2d 1373 at 1380 (D.C. Cir. 1988) ...................................... 12

*Foster v. Univ. of Md. E. Shore*
    ............................................................................................. 2-3

*Hawkins v. PepsiCo, Inc.*,
    203 F.3d 274, 279 (4th Cir. 2000) ............................................ 10-11

Haynes v. Waste Connections, Inc.,
    922 F.3d 219, 225-226, 2019 ...................................................... 7

*Hux v. City of Newport News*,
    451 F.3d 311, 315 (4th Cir. 2006) .............................................. 11

*Jaudon v. Elder Health, Inc.*,
    125 F. Supp. 2d 153, 165 (D. Md. 2000) .................................... 5

*Johnson v. United Parcel Serv., Inc.*,
    839 Fed.Appx. 781, 783-84 (4th Cir. 2021) ............................... 3, 5

*Lettieri v. Equant Inc.*,
    478 F.3d 640, 650 (4th Cir. 2007) .............................................. 3, 5

*Mohammed v. Cent. Driving Mini Storage*,

128 F. Supp. 3d at 947 ................................................................. 11

*Reeves v. Sanderson Plumbing Prods.*,
  530 U.S. 133, 148 (2000) ............................................................ 8

*Stokes v. IKEA US Retail, LLC*,
  *2*024 U.S. Dist. LEXIS 25464, *13-14 (D. Md. 2024)................................. 5, 12

*Unites States v. Andres*,
  No. 23-4196, 2024 U.S. App. LEXIS 23440 (4th Cir. Sept. 16, 2024)......... 15

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338, 339 (2013) ............................................................ 2

*Wray v. Northern Telecom*,
  No. 1:93CV00129, 1995 U.S. Dist. LEXIS 2450 (M.D.N.C. Jan. 27, 1995) 10

**Statutes**

Fed. R. App. P. 28(a)(8)(A) .............................................................. 19

# ARGUMENT

Edward Williams ("Williams") was a Child Protective Service ("CPS") Supervisor for the Fairfax County Department of Family Services' ("DFS" Children Youth and Families Division ("CYF") between July 2019 and May 2020. JA272, JA276, JA338-351, 354-355. During that time, he was open about his sexual orientation and his marriage to a man. *Id*. During his employment with the County, Williams was routinely berated and singled out by Sonia Aronow, a County employee who acted as his supervisor, and ultimately told that he should not disclose his sexual orientation to his colleagues and leadership because doing so would be detrimental to his career. JA678-670. While the County tries to gloss over Ms. Aronow's comments, her message to Williams on January 16, 2020 was clear – it unacceptable to be open about his sexual orientation or his marriage to his husband and if he continued to do so, he would not have a future with the County. *See id*. Williams, pursuant to County policy, reported Ms. Aronow's comments to his immediate supervisor, Karen De Mjiango, and ultimately to HR. *See id*. Just over three months after doing so, Williams was terminated from his employment with the County, with no contradicting justifications and explanations, and a paper trail that suggests that the County pushed Williams out in retaliation for engaging in protected activity.

The County concedes that Williams established that he engaged in protected

1

activity and that he suffered a materially adverse action. Appellant's Br. 23. The
County disputes that Williams established the materially adverse action was
causally connected to his engaging in protected activity.[1] *Id*. Taking it a step
further, Appellant argues that even if Williams did establish a *prima facie* case, the
County presented evidence of a legitimate, non-discriminatory reason and
Williams has not shown that the County's reason was false. *Id*. at 28.[2]

Williams disputes the County's contentions, but more importantly, Williams
is not required to "prove" anything at the summary judgment stage. *See Foster v.
Univ. of Md. E. Shore*, 787 F.3d 243, 254 (4th Cir. 2015). Rather, at this stage,
what Appellant is required to demonstrate via the evidence in the record, is that a
reasonable jury could conclude that the County's real reason for terminating
Williams was his complaint about Ms. Aronow's discriminatory comments, and he
in fact did so. *See Foster v. Univ. of Md. E. Shore*, 787 F.3d at 250, 254 (cleaned
up) ("If a plaintiff can show that she was fired under suspicious circumstances and
that her employer lied about its reasons for firing her, the factfinder may infer that

---

[1] The County relies *Univ. of Tex. Sw. Med. Ctr. v. Nassar* throughout its brief when
referencing the requirements for establishing a prima facie case of retaliation
or pretext. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013).
However, "*Nasser* involved a post-judgment motion for judgment as a matter of law
in a mixed-motive case, and therefore did not address or alter the elements of a prima
facie case of retaliation under the pretext framework." *See Foster*, 787 F.3d at 250
citing *Nasser*, 570 U.S. at 345-346.

the employer's undisclosed retaliatory animus was the actual cause of her termination."); *see also Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

For the reasons set forth in Appellant' Opening Brief, his Reply, and at oral argument, the trial court erred in granting summary judgment in favor of Appellee and that judgment should be reversed.

## I.     Williams Established a Prima Facie Case for Retaliation

The "causation standard standards for establishing a prima facie retaliation case and proving pretext are not identical. Rather, the burden for establishing causation at the prima facie stage is "less onerous.'" *Foster*, 787 F.3d at 251 (cleaned up). The existence of other facts such as post-complaint retaliatory conduct or retaliatory animus can be sufficient to show a causal link between Williams engaging in protected activity and his termination. *See Johnson v. United Parcel Serv., Inc.*, 839 Fed.Appx. 781, 783-84 (4th Cir. 2021); *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

In his opposition to Appellee's motion for summary judgment, Appellant set forth, in detail, multiple actions separate and apart from his wrongful termination from his employment with the County that would dissuade a reasonable employee

3

from making or supporting a charge of discrimination. *See Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (cleaned up). Specifically, Appellant submitted evidence that Ms. Aronow complained to HR regarding alleged performance issues *five days* after he complained about her discriminatory conduct. Appellant also produced evidence that Ms. Kawahara advised him not to file a Charge of Discrimination with the EEOC and evidence demonstrating the County's failure to conduct any meaningful investigation into Appellant's complaint. JA683.

Ms. Aronow stopped by Ms. Harden's office under the guise of following up on the discussion regarding Williams' complaint. JA1039-1040. Ms. Harden's handwritten notes from the January 21, 2020 meeting show that Ms. Aronow came to Ms. Harden's office to complain about Williams' performance in retaliation for Williams' reporting her to HR. JA1282-185. Ms. Harden's notes demonstrate that Ms. Aronow mentioned "red flags" and that Ms. De Mijango was considering putting Williams on a PIP, however, those statements are not substantiated in Ms. De Mijango's timeline. JA1647-1653. Further, Ms. Harden's notes are clear that Ms. Aronow felt her ability was being questioned as a result of Williams' complaint and noted that she felt "betrayed" as a result of Williams going to HR. JA1285.

Despite not speaking with Williams herself, Ms. Harden spent at least an hour during this second meeting with Ms. Aronow. JA1039. That same day, Ms. Aronow had provided a written statement to Ms. Walden, under the title "QA Consultant."

JA1279-1281. Ms. Aronow did not raise the alleged issues with Williams' performance that were documented in Ms. Harden's notes from her meeting with Ms. Harden that same day. *Id*. Instead of conducting further investigation or speaking with Williams again, Ms. Harden and Ms. Kawahara closed the investigation *ten days* later, finding that based on the EEOC's definition of discrimination, Ms. Aronow's conduct was not discriminatory. JA1296.

Williams provided sufficient evidence to establish a prima facie case of retaliation and, as the County conceded, shift the burden to the County to provide a legitimate, non-discriminatory reason for his termination. *See Johnson v. United Parcel Serv., Inc.*, 839 Fed.Appx. 781, 783-84 (4th Cir. 2021); *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

## II. Williams presented sufficient evidence to permit a reasonable juror to find the County's proffered reason for terminating his employment was false.

A plaintiff may show the County's proffered, non-discriminatory reason for termination is pretext via an intervening pattern of retaliatory conduct, inconsistent reasons offered by the employer for the adverse action, and differential treatment of other employees. *Stokes v. IKEA US Retail*, LLC, 2024 U.S. Dist. LEXIS 25464, *13-14 (D. Md. 2024); s*ee also Jaudon v. Elder Health, Inc.*, 125 F. Supp. 2d 153, 165 (D. Md. 2000) ("[F]actors pertinent to the causation element may include temporal proximity between the two events, an intervening pattern of retaliatory

conduct, inconsistent reasons by the employer for adverse action, and differential treatment of other employees."). "In retaliation cases, the same type of evidence may be used to prove both the causal connection requirement and pretext. *Mohammed v. Cent. Driving Mini Storage*, 128 F. Supp. 3d 932, 947 (E.D. Va. 2015). Here, the very same evidence submitted in support of the causation element of Wiliams' prima facie case of discrimination supports but for causation for his argument that the County's alleged legitimate, non-discriminatory reason for terminating his employment was pretext and he was in fact terminated because he engaged in protected activity.

### A. The County's Retaliatory Conduct

The County began retaliating against Williams almost immediately after he filed his complaint. A mere ***five days*** after Williams spoke with Ms. Kawahara regarding Ms. Aronow's discriminatory comments, and following Ms. Harden's investigative phone call with Ms. Aronow and her written statement, Ms. Aronow "popped in" to Ms. Harden's office on January 21, 2020, without investigation, to allegedly follow up on her two previous statements to HR in response to Williams' complaint. JA1282-84. During that meeting, Ms. Aronow launched into an unsolicited conversation regarding Williams' alleged poor performance. *Id*. This information is not corroborated by any of the documents submitted by the County, including the timeline of events that Ms. De Mijango conveniently created to fill in

6

any gaps in her narrative over *seven months* after Williams made his initial complaint. JA662-668.

The County's failure to do any legitimate investigation into Williams' complaint, its bias towards Ms. Aronow, and its failure to counsel or disciple Ms. Aronow also support the causation here.

**B. The County's Inconsistent Reasons for Williams' Termination**

Williams demonstrated that the County's purported reasons for his termination were false and thus a genuine issue of material fact existed as to pretext and summary judgment was inappropriate. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225-226 (4th Cir. 2019) (cleaned up) ("In order to show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact."). Here, Williams showed that that County's reasons changed over time *and* were based on a mistake of fact.

The County relies heavily on De Mijango's unfounded allegations that Williams put children in danger and alleges that Slappey's report corroborates that allegation. It does not.

The Slappey Report itself shows that the issues that the County was attributing to Williams were in fact failures or areas of improvement for the County, not Williams. For example, the report lists "Appropriate referrals" under "Concerning

Practice." *See* 1671. However, the report states that the cases reviewed "demonstrated a lack of referral to domestic violence services when DV was a primary issue in the case." *Id*. But the report also states that this alleged "concerning practice" was likely a result of the County's need to improve its training and intradepartmental collaboration. *See* JA1674 (Noting that the County's lack of collaboration with its domestic violence unit was the reason appropriate questions were not being asked in CPS cases reviewed).

The County also misrepresents the text of the documents submitted into evidence on multiple occasions. For example, Slappey reported that, based on the documentation, the reviewers "clearly determined children were safe at the time of case close in only about half the cases." JA 1806. The report goes on to say that in some instances, it was not possible to determine from the documentation whether the children were safe, not, as the County states, that "Willimas had approved the closure of over 50% of the cases in his unit 'without making a determination as to whether the involved children were safe from abuse or neglect. . . ." Appellant's Br. at 15. The language quoted is nowhere in Slappey's report *or* her declaration, however, it is stated repeatedly in the documents the County submitted to the trial court to obtain summary judgment. JA1540, 1544. This misrepresentation alone is enough to create a question as to veracity of the County's reason for terminating Williams' employment.

Prior to April 10, 2020, the only areas for improvement noted for Williams were administrative such as preparing more details notes and responding to emails/cleaning out his email inbox. *See* JA0986, JA0988, JA670-675. To the extent any other concerns were identified regarding Williams' performance as a supervisor, those concerns did not form the basis for the County's proffered decision to terminate Williams and therefore should not be considered.

During the March 12, 2020 visit, Williams' case worker observed the minors in the home and found no signs of abuse and neglect and noted there were no immediate safety concerns. JA1959-60. The plan going forward was that the mother would use her parents to help support her in caring for her children, not to take her place. JA1960. Further, it was the father that was not to be left alone with the children, not the mother. JA1753, 1757,1960.

While what happened with the mother in front of her two minor children was something that two children should never have to witness; nothing submitted by the County shows that it was Edward's fault this happened. Additionally, the County's actions in response to the April 10th referral do not demonstrate a sense of urgency or indicate they were acting as minor children were in danger. JA1758.

As of April 29, 2020, ***prior*** to Williams being put on administrative leave, the County could not articulate or agree on a basis for separating Williams from his employment; they just knew they wanted to do it. *See* JA1970-1983. In fact, as of

9

April 29th, the County could not articulate the issues with Williams' performance that would substantiate his termination. *See id*. As of April 30th, the County **had already decided** to terminate Williams' employment (although it had not quite decided why yet), and Michael Becketts communicated to Williams that he was being placed on administrative leave to "conduct a thorough investigation concerning the appropriate handling of [Williams'] child abuse and neglect referrals" and that during this leave, "all aspects of [his] cases will be reviewed, for possible disciplinary action up to and including dismissal. . . ." JA1984. By that time, Slappey had conducted the reviews and provided her report the week of April 20 through 24, 2020 – **five days** before Williams was put on administrative leaving "pending investigation." JA762-763. That same day, the County was drafting Willaims' separation memorandum, citing specific alleged performance issues. JA1986-1988. In fact, the referral that the County relies on heavily for its dismissal of Williams **is not included** in the proposed unsatisfactory service separation memorandum. JA1987-88. This evidence, at a minimum, shows that there is a genuine issue regarding whether the County's proffered reasons for Williams' termination are true and accordingly, summary judgment was not appropriate. *See Wray v. Northern Telecom*, 1995 U.S. Dist. LEXIS 2450, *8-9 (D. NC 1995).

This case is distinguishable from *Hawkins v. PepsiCo, Inc.*, cited by Appellant for the proposition that Williams cannot challenge the County's alleged

nondiscriminatory reason for terminating his employment. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000). Plaintiffs' performance record in *Hawkins* was largely uncontroverted, with the exception of the plaintiff's own perception of her abilities. *See id*. Here, the County has given multiple explanations for Williams' termination, has relied on inaccurate documents and unsubstantiated accusations, and provided a timeline of events that demonstrates that its reasoning is not credible.

While the County proffered a nondiscriminatory reason for Williams' termination from employment with the County, that is not the end of the inquiry as Appellant argues. *See* Appellee's Brief at 35. Plaintiff is required to "present evidence reasonably calling into question the honesty of [the County's] belief." *See DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (cleaned up). Similarly, this case is also distinguishable from *Hux V. City of Newport News*, as the factual inaccuracies and false information provided by the County surrounding Williams' separation from employment are not "minor discrepancies, are directly relevant to the challenged action, and cast doubt on the validity of the County's explanation and the County's credibility overall. *See Hux V. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006).

11

**III.    The County refused to provide comparator evidence in discovery and should not be permitted to rely on the lack of the same to prevail on summary judgment.**

Finally, Williams can show causation via differential treatment of other employees. *See Stokes v. IKEA US Retail, LLC*, 2024 U.S. Dist. LEXIS 25464 at *13-14 (cleaned up) (Inconsistent reasons by the employer for the adverse action may support the causation element of a plaintiff's prima facie relation case as well as the causal connection requirement for pretext). However, the County failed to provide *any* comparator evidence, even though it was timely and properly requested via discovery.

Appellee misrepresents this Court's holding in *Harrods Ltd. v. Sixty Internet Domain Names,* which clearly states: "if the nonmoving  party's objections before the district court 'served as the functional equivalent of an affidavit,'  and if the nonmoving party was not lax in pursuing discovery, then we may consider whether the district court granted summary judgment prematurely, even though the nonmovant did not record its concerns in the form of a Rule 56(f) affidavit." *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) citing *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1373 at 1380 (D.C. Cir. 1988). Appellee has not argued that Williams was dilatory in pursing discovery, and, like the appellant in *Harrods*, Williams argued, repeatedly, in his memorandum opposing summary judgment that he did not have the underlying case files to rebut the

County's statements despite that these files would have been responsive to his discovery requests. *See* JA1406-1407, 1427 at fn. 3 and 4. He argued that the County engaged in "consistent and obstructive efforts to avoid producing comparator evidence," and showed a lack of good-faith cooperation warranting an adverse inference against it. JA1422. At the motion hearing, the court was again informed that the underlying case files had not been produced in discovery. JA2123-24. Williams repeated objections served as the "functional equivalent" of a Rule 56(d) Affidavit.

At trial, Williams would introduce evidence of the County's failure to provide this information, as required, in discovery. The County's gamesmanship and failure to comply with its discovery obligations would permit a reasonable juror to find that the County's alleged reasons for Williams' termination were pretext and he was in fact fired for engaging in protected activity.

For these reasons, the trial court erred in granting the County's motion for summary judgment as a genuine dispute of material fact exists regarding Williams' ability to demonstrate that he was unlawfully retaliated against in light of the County's proffered legitimate, non-discriminatory reasons for Williams' termination and Williams' appeal should be granted.

**IV. Williams has not waived appellate review of his claims of sexual orientation discrimination and hostile work environment.**

Williams' Brief contends that he was (i) discriminated against on the basis of sexual orientation, and (ii) subjected to a hostile work environment. Appellant's Br. 2. He supports these contentions with reasons and citations to the record in satisfaction of Federal Rule of Appellate Procedure 28. *See* Fed. R. App. P. 28(a)(8)(A).

Williams contends that the Court erred in granting summary judgment for the County by failing to consider key facts and doctrines. *Id*. at 13, 35. He argues that, "[o]n all Counts, the Court improperly put itself in the role of the jury – by, *inter alia*, making credibility determinations and weighing evidence – depriving Appellant of his right to have the case decided by a jury of his peers." *Id*. 14.

In support of his claim for sexual orientation discrimination under Title VII, Williams' stated that Aronow was assigned to assist Williams with transitioning to processing cases and he viewed her as his supervisor. *See* Appellant's Br. at 3 citing JA300-305, JA0826, JA1949-1950, JA1879, JA1953. During a scheduled meeting with Aronow, she told Williams he should conceal his sexual orientation in order to succeed at the County. *See id*. at 5 citing JA676-680. Aronow made numerous discriminatory comments to Williams about identity and sexual orientation, including that he should not disclose he is a gay man and married to another man if he wanted to succeed in the County. *See id*. at 5-6 citing JA676-749, JA1130-1159.

14

Williams reported the sexual orientation discrimination the next day and filed a formal complaint to HR on January 21, 2020. *Id*. at 6 citing JA1421-1422, JA676-680, JA1405.   Williams argues Appellee's reasons for his termination were mere pretext for discrimination.  *Id*. at 37-40, 45-48.

Williams also clearly states his claim for hostile work environment. *See id*. at 2. In addition to the discriminatory comments about his sexual orientation he endured in January 2020, he recounts that Aronow did not provide him with coaching and instead openly disagreed with his assessments while using demeaning and degrading behavior to undercut his authority in front of his staff. *Id*. at 4 citing JA917-918, JA1872-1874, JA1915. While he did not initially understand why Aronow was singling him out and berating him, once she told him he should conceal his sexual orientation to succeed with the County, he understood that she was treating him that way because he was an openly gay male.

The County cites to *Unites States v. Andres* to support its waiver argument. In *United States v. Andres*, appellant asserted the district court erred by refusing to allow him to recross a witness "about a new topic the Government had opened in redirect." *United States v. Andres*, No. 23-4196, 2024 U.S. App. LEXIS 23440 (4th Cir. Sept. 16, 2024).  The appellant did not state what the new topic was or provide any case-specific analysis in his brief, only arguing that the "new information was the description of the conduct of various tests," in his reply brief. *Id*.  This is not

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ]    this brief contains [3587] words.

2.    This brief complies with the typeface and type style requirements because:

3.

    [ X ] this brief has been prepared in a proportionally spaced typeface using [Microsoft Word 365] in [14pt Times New Roman]; or


    [ ] this brief has been prepared in a monospaced typeface using [ state name and version of word processing program] with [state number of characters per inch and name of type style].


Dated: November 14, 2024                /s/ Roya Vasseghi
                                              Roya Vasseghi

17

<u>**CERTIFICATE OF FILING AND SERVICE**</u>

I hereby certify that on this 14th day of November, 2024, I cause this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following register CM/ECF users:

> Jamie M. Greenzweig
> Senior Assistant County Attorney
> Office of the County Attorney
> 12000 Government Center Parkway
> Suite 549
> Fairfax, VA 22035
> [Jamie.greenzweig@fairfaxcounty.gov](mailto:Jamie.greenzweig@fairfaxcounty.gov)

/s/ Roya Vasseghi
*Counsel for Appellant*
